```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ALECIA WALKER, as Administrator of the        MEMORANDUM AND ORDER
Estate of DEAN WILLIAMS, deceased,            Case No. 08-CV-2339 (FB) (CLP)

                    Plaintiff,

      -against-

SUNNYSIDE CORPORATION, COLOR
WORLD PAINTS, INC., DITMARS PAINT
SUPPLY CO., INC., BALL CORPORATION,
BWAY CORPORATION, and EQUISTAR
CHEMICALS, LP,

                    Defendants.
-------------------------------------------------------------x

SUNNYSIDE CORPORATION,

                    Third-Party Plaintiff,

      -against-

AFFORDABLE ENTERPRISES, LTD.,

                    Third-Party Defendant.

-------------------------------------------------------------x
```

*Appearances:*
For the Plaintiff:
JOSHUA FOGEL
DAVID B. TURRET
Sanocki Newman & Turret, LLP
225 Broadway, 8th Floor
New York, NY 10007

*For Defendant Sunnyside Corporation*:
BARRY R. TEMKIN
JOSHUA L. MILRAD
Mound Cotton Wollan & Greengrass
One Battery Park Plaza
New York, NY 10004

*For Cross-Claim Defendant Ball Corporation*:
JAMES A. GALLAGHER, JR.
JAMES F. GALLAGHER
Gallagher & Faller
1050 Franklin Avenue, Suite 400

Garden City, NY 11530

**BLOCK, Senior District Judge:**

Plaintiff Alecia Walker, as Administrator of the Estate of Dean Williams, brings suit against defendant Sunnyside Corporation ("defendant") for injuries arising from her late-husband's use of an alcohol solvent manufactured and sold by Sunnyside. Sunnyside has filed claims for indemnification and contribution against Ball Corporation, the manufacturer of the solvent's container, and Affordable Enterprises, Ltd. ("Affordable Enterprises"), Williams' employer at the time of the incident. Affordable Enterprises in turn seeks contribution from Ball Corporation.[1] Sunnyside now moves for summary judgment on plaintiff's claims, and Ball Corporation moves for the same on the claims alleged against it by Sunnyside and Affordable Enterprises. As discussed below, Sunnyside's motion is granted in full; Ball Corporation's motion is denied as moot.

**I**

The following facts, taken from the parties' Rule 56.1 statements, are undisputed unless otherwise noted. Where disputed, they are presented in the light most favorable to the plaintiff. *See Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

At the time of the incident, Dean Williams ("Williams") worked as a mechanic for Affordable Enterprises, a company specializing in window and storefront installations. While preparing a pane of glass for application of a sealant, Williams poured a portion of

---

[1] Plaintiff's claims against Ball Corporation and Bway Corporation have been dismissed, and a default judgment was granted against Color World Paints, Inc., and Ditmars Paint Supply Co., Inc. Due to an ongoing bankruptcy proceeding the case was administratively closed as to Equistar Chemicals, LP.

defendant's product, Sunnyside Denatured Alcohol Solvent ("solvent") onto a rag. Williams then closed the container, placed it onto a nearby work table, and used the rag to clean the glass pane. Although the canister was closed, someone had previously punctured a small hole in the top of the can, permitting the solvent's fumes to escape. Shortly thereafter an unidentified employee lit an ignition source, whereupon the solvent's fumes caught fire and caused the canister to explode. Williams suffered severe burns to the upper portion of his body as a result.

The front label of the solvent reads as follows:

> WARNING!
> FLAMMABLE LIQUID & VAPOR.
> VAPORS MAY CAUSE FLASH FIRE. EYE IRRITANT.
> Carefully read all cautions elsewhere on this container. As a fuel, use only as directed.

Buchanan Decl. Ex. 1 at 1 [Label]. The back label of the solvent lists directions for use of the solvent as a fuel, then states:

> **CAUTIONS:** CONTAINS DENATURED ALCOHOL AND LESS THAN 4% METHANOL. Keep away from heat, sparks and flame. Vapors are given off rapidly during use and may ignite explosively. Vapors are heavier than air and may travel long distances to other rooms or lower areas. DO NOT use in confined areas such as basements or bathrooms. Open all doors and windows to provide plenty of fresh air cross ventilation equal to outdoor conditions. DO NOT smoke. Extinguish all flames and pilot lights, and turn off stoves, heaters, electric motors and other sources of ignition during use and until all vapors are gone. Vapors may linger for 30 minutes or more after use. If you smell Alcohol, vapors are still present. Do not turn ignition sources on or relight pilot lights until certain that all vapors are gone. Avoid rubbing; friction may cause static electric sparks which may ignite vapors. Do not attempt to start or re-ignite charcoal, wood or any other fire with this product. An explosive fire may result or fire may flash back into the can and explode. For disposal guidance

> of unused product, contact a household hazardous waste program, or your local or state government environmental control agency.

*Id.* at 2. Below this text the label lists a variety of health hazards, first aid directions, and the following statements:

> **Use only with adequate ventilation.**
> **KEEP OUT OF REACH OF CHILDREN**

*Id.* Prior to using the solvent, Williams read the label and understood that the product was flammable.

Williams filed suit in state court on May 12, 2008 to recover for his personal injuries. Defendants removed the action shortly thereafter based upon diversity jurisdiction. On December 13, 2009, Williams committed suicide. His wife, Alecia Walker, subsequently filed an amended complaint ("complaint") adding a cause of action for wrongful death. The complaint contains five causes action: (1) negligence; (2) strict liability; (3) breach of express warranty; (4) breach of implied warranty; and (5) wrongful death. These claims center upon Sunnyside's alleged failure to warn consumers of the dangers and hazards associated with using the solvent—particularly with respect to the danger of flash fires caused by ignition of the solvent's vapors. Plaintiff seeks $20 million in damages.[2]

II

---

[2] Although plaintiff's complaint contains manufacturing and design defect allegations, she represents that she has since withdrawn these claims. In any event, they are deemed abandoned due to plaintiff's failure to address them in her opposition brief. *See Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) ("Because plaintiff's opposition papers did not address defendant's motion for summary judgment on [plaintiff's abuse of process] claim, the claim is deemed abandoned and summary judgment should be granted on that basis alone.").

1.     **Sunnyside's Motion for Summary Judgment**

Sunnyside seeks summary judgment on all five of plaintiff's claims. It asserts that plaintiff's negligence and strict liability claims, premised upon a failure to warn theory of liability, are preempted by federal statute. Sunnyside contends that plaintiff fails to raise issues of material fact as to the remaining state law claims.

A.     **Preemption Under the FHSA**

Sunnyside first asserts that plaintiff's negligence and strict liability claims are preempted by the Federal Hazardous Substances Act, 15 U.S.C. § 1261 sec. 2, *et seq.* ("FHSA"). The FHSA was enacted in 1960 to "provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use." H.R. REP. No. 86-1861, at 2 (1960), *reprinted in* 1960 U.S.C.C.A.N. 2833, 2833. The parties agree that Sunnyside's solvent is a "hazardous substance," making it regulated by the FHSA. *See* 15 U.S.C. § 1261(f)(1)(A)(v) (defining a hazardous substance as "[a]ny substance or mixture of substances which . . . is flammable or combustible"). The FHSA contains the following preemption provision:

> [I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under [15 U.S.C. §§ 1261(p) or 1262(b)] designed to protect against a risk of illness or injury associated with the substance, no State . . . may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under [15 U.S.C. §§ 1261(p) or 1262(b)].

Federal Hazardous Substances Act of 1966, Pub. L. 89-756, § 4(a), 80 Stat. 1305, *renumbered and amended*, Act of Nov. 6, 1969, Pub. L. 94-284, § 17(a), 90 Stat. 510, *reprinted at* 15 U.S.C. § 1261

note (b)(1)(A) "Effect upon Federal and State Law." Accordingly, the Second Circuit has held that where a plaintiff's state law claims "seek to impose additional or more elaborate labeling requirements" than the FHSA sets forth, such claims are preempted by the statute. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 109 (2d Cir. 2001). In contrast, "state cause[s] of action alleging non-compliance with the FHSA [are] *not* preempted by the Act." *Id.* (emphasis in original). Plaintiff alleges that the label on Sunnyside's solvent fails to comply with the FHSA-mandated labeling requirements, rendering it a "misbranded hazardous substance" under the Act.[3]

A manufacturer violates the FHSA if it "introduc[es] into interstate commerce . . . any misbranded hazardous substance." 15 U.S.C. § 1263(a). A hazardous substance is misbranded "if such substance . . . fails to bear a label [] which states conspicuously . . . [1] an affirmative statement of the principal hazard or hazards, such as 'Flammable', 'Combustible', 'Vapor Harmful', 'Causes Burns', 'Absorbed Through Skin', or similar wording descriptive of the hazard; [and] [2] precautionary measures describing the action to be followed or avoided." 15 U.S.C. § 1261(p)(1)(E), (F); *see also* 16 C.F.R. § 1500.127 (requiring that labels of products with multiple hazards contain "[a]n affirmative statement of each such hazard; [and] the precautionary measures describing the action to be followed or avoided for each such hazard"). Plaintiff argues that the solvent is misbranded because it fails to meet each of these requirements, and additionally asserts that the label does not comply with the FHSA's typeface formatting standards.

---

[3]To the extent plaintiff's claims may be construed as seeking to impose labeling requirements not mandated by the FHSA, they are preempted by the Act. *See Milanese*, 244 F.3d at 109.

i.    **Principal Hazard**

Plaintiff, through expert witness Kenneth Laughery, Ph.D. ("Laughery"), first claims that the solvent does not comply with the FHSA because it fails to warn of one of the principal hazards of the solvent. That is, plaintiff asserts that the label should have included a statement alerting users that punching a hole in the canister permits vapors to escape, such that if introduced to an ignition source, the resulting flash fire may "flash-back" into the canister through the hole and cause an explosion. Laughery Decl. ¶¶ 9, 17, 34, 37, 38.

This argument is misplaced. The principal hazard of the solvent is the risk of flash fires resulting from ignition of the solvent's vapors—not the method upon which the vapors may come into contact with elements outside the canister. Regardless of *how* the solvent's vapors are exposed to elements outside the canister, the risk created is the potential for flash fires. Without an ignition source, the solvent's vapors will not result in a flash fire or explosion.

The FHSA provides examples of "principal hazard" statements, including "Flammable," "Combustible," "Vapor Harmful." 15 U.S.C. § 1261(p)(1)(E). Likewise, the regulations set forth similar examples, including "Vapor Harmful," "Flammable," and "Skin and Eye Irritant." 16 C.F.R. § 1500.121(a)(2)(vii). The front label of the Sunnyside solvent clearly warns of the principal hazard of flash fires in compliance with the FHSA: "FLAMMABLE LIQUID & VAPOR. VAPORS MAY CAUSE FLASH FIRE." Label at 1. While an additional warning—instructing that vapors may escape through a puncture hole—might serve to reinforce the flash fire warning provided, such a warning is not required by the FHSA. *See Torres-Rios v. LPS Labs., Inc.*, 152 F.3d 11, 14-15 (1st Cir. 1998) (affirming summary

judgment on claims alleging label "failed to warn of the magnified risk of a flash fire when the product is sprayed," stating "[w]e agree that users would be better informed if the label contained more information. That, however, would be true at most levels of detail . . . ." calling it "a matter of common sense" that "more vapors are produced when a liquid is sprayed"); *see also Mwesigwa v. DAP, Inc.*, 637 F.3d 884, 888 (8th Cir. 2011) (affirming grant of summary judgment on claims alleging FHSA non-compliance where plaintiff sought warning of "risk of fire from an accidental spill of the [product] as a principal hazard separate from the product's general flammability"); *Pa. Gen. Ins. Co. v. Landis*, 96 F. Supp. 2d 408, 416 (D.N.J. 2000) (finding label that cautioned "EXTREMELY FLAMMABLE LIQUID AND VAPOR. VAPOR HARMFUL AND MAY CAUSE FLASH FIRE" met the FHSA "principal hazard" requirement by warning of flash fires); *Penwell v. Rust-Oleum Corp.*, 2006 WL 3792660, at * 2 (W.D. Wis. Dec. 22, 2006) (finding label complied with the FHSA where it warned of "combustibility," rejecting plaintiff's claim that "spontaneous combustion" was a separate principal hazard also requiring a warning: "[I]ndividual conditions [causing combustion] are not the principal hazard as defined by the [FHSA].").

**ii.   Precautionary Measures**

Plaintiff next argues that the solvent is misbranded under the FHSA because it does not contain the requisite statements of precautionary measures to follow in order to avoid the principal hazard of flash fires. Specifically, plaintiff claims that the solvent's label fails to explain the following warnings: (1)"Use only with adequate ventilation"; (2)"Vapors . . . may travel long distances"; and (3)"Vapors are heavier than air." Laughery Decl. ¶¶ 39, 47(3), 50(c). Plaintiff also asserts that the label should have warned that the use of "explosion

proof ventilation equipment" is necessary where the solvent is being utilized in a controlled industrial environment within a confined space. *Id.* ¶ 32.

In order to determine whether a hazardous product complies with the FHSA labeling requirements, "courts often compare the product's label with that previously required by the Consumer Product Safety Commission ["CPSC"] to be placed on extremely flammable contact adhesives." *Milanese*, 244 F.3d at 112. The CPSC sample warning provides:

> DANGER. EXTREMELY FLAMMABLE. VAPORS MAY CAUSE FLASH FIRE. Vapors may ignite explosively. Prevent buildup of vapors—open all windows and doors—use only with cross-ventilation. Keep away from heat, sparks, and open flame. Do not smoke, extinguish all flames and pilot lights, and turn off stoves, heaters, electric motors, and other sources of ignition during use and until all vapors are gone. Close container after use. Keep out of the reach of children.

16 C.F.R. § 1500.133(b). This warning statement "is considered [] the minimum cautionary labeling adequate to meet the requirements of [15 U.S.C. § 1261(p)(1)]." *Id.*

The CPSC language is virtually identical to the language on the solvent's label. In fact, the Sunnyside label provides decidedly more information than is required by the FHSA regarding precautionary measures to take in order to avoid the risk of flash fires. For instance, while plaintiff complains that the warning "[u]se only with adequate ventilation" is not sufficiently explained, the label cautions: "DO NOT use in confined areas such as basements or bathrooms. Open all doors and windows to provide plenty of fresh air cross ventilation equal to outdoor conditions. . . . Vapors may linger for 30 minutes or more after use. If you smell Alcohol, vapors are still present. Do not turn ignition sources on or relight pilot lights until certain that all vapors are gone." Label at 2. And despite plaintiff's assertion that there is insufficient explanation for the warning "[v]apors . . . may travel long distances,"

9

the label cautions that the solvent's vapors "may travel long distances to other rooms or lower areas." *Id.*

"Disagreement over the adequacy or sufficiency of the information provided on a label does not necessarily raise material issues of fact as to compliance. What matters is whether the label satisfies the requirements of the FHSA, not whether a label defines every phrase and addresses every potential hazard." *Canty v. Ever-Last Supply Co.*, 685 A.2d 1365, 1375 (N.J. Super. Ct. Law Div. 1996) (comparing product's label to CPSC language and finding the warnings complied with the FHSA and CPSC requirements); *see also Moss v. Parks Corp.*, 985 F.2d 736, 742 (4th Cir. 1993) (same); *Kirstein v. W.M. Barr & Co.*, 983 F. Supp. 753, 763 (N.D. Ill. 1997) (same); *cf. Milanese*, 244 F.3d at 112 (finding issue of material fact where the product's label did not warn of the risk of flash fires as distinct from the product's flammability, and label failed to track the CPSC sample warning, also citing *Landis*). Here, the Sunnyside label clearly complies with "both the letter and the spirit of the FHSA and the CPSC regulations."[4]

---

[4]While plaintiff asserts that a number of other warnings should have been provided—including instructions to replace the solvent's cap after use, that empty containers may contain residue, and temperature values where flammable vapors occur—these warnings are neither required by the FHSA nor is their absence alleged to have proximately caused Williams' injuries. *See Marache v. Akzo Nobel Coatings, Inc.*, 2010 WL 908467, at *9 (S.D.N.Y. Mar. 12, 2010) ("To establish proximate cause, an inadequate warning must be a substantial cause of the events leading to the injury. An act cannot be the 'substantial cause' if the injury would have occurred regardless of the content of a defendant's warning." (citation omitted)).

Plaintiff's reliance upon *Liebstein v. LaFarge N.A. Inc.*, 689 F. Supp. 2d 373 (E.D.N.Y. 2010) and *Marache*, 2010 WL 908467, is inapposite. *Liebstein* concerned a plaintiff's chemical burns from cement, where issues of fact existed regarding whether: (1)"CORROSIVE" and "INJURIOUS TO . . . SKIN" communicated that the product could cause severe chemical burns; (2)"AVOID CONTACT WITH SKIN" was sufficient to warn against both direct and indirect contact; and (3)"Wear suitable eye protection, gloves, and protective clothing" advised that impervious protective clothing should be

*Landis*, 96 F. Supp. 2d at 417.

### iii. Formatting of the Warnings

Finally, plaintiff argues that the warnings on the solvent's label do not comply with the FHSA's prescribed typeface formatting requirements. Laughery opines that the solvent's warning language is too dense, has long paragraphs, and is devoid of pictorials. Laughery Decl. ¶¶ 47, 50. In support, he cites to guidelines for product warning designs set forth by certain professional and technical societies through the American National Standards Institute ("ANSI").

The FHSA requires that a label's warnings be "located prominently and [] in the English language in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on the label." 15 U.S.C. § 1261(p)(2). The regulations set forth more detailed specifications including, *inter alia*, that labels be placed horizontally and in certain type sizes and styles. 16 C.F.R. § 1500.121. Plaintiff has not provided any evidence that the solvent's label fails to meet these requirements. Furthermore, while Laughery cites to ANSI guidelines as standards for appropriate typeface formatting, the guidelines themselves state that "[t]he use of American National Standards is completely voluntary . . . . The [ANSI] does not develop standards . . . ." Laughery Decl. Ex. P at 3 [American National Standard Product Safety Signs and Labels]; *see also Torres-Rios*, 152 F.3d at 14 (explaining that ANSI "guidelines do not have the force of law").

---

worn. 689 F. Supp. 2d at 387-88. *Marache* analyzed a manufacturer's safety data sheet rather than a product label, where the data sheet instructed users to "store [the product] in a well-ventilated area," but provided no further guidance as to "how to properly ventilate." 2010 WL 908467, at *12.

11

Summary judgment is granted on plaintiff's negligence and strict liability claims.

**B.     Remaining State Law Claims**

Plaintiff's claims for breach of express warranty, breach of implied warranty, and wrongful death must likewise be dismissed.

The FHSA does not preempt breach of warranty claims "because such liability arises not from a requirement imposed by State law, but from a promise voluntarily made by the manufacturer." *Wallace v. Parks Corp.*, 212 A.D.2d 132, 138 (4th Dep't 1995). "To establish the breach of an express warranty, the plaintiff must show that there was an affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." *Barrett v. Black & Decker (U.S.) Inc.*, 2008 WL 5170200, at *12 (S.D.N.Y. Dec. 9, 2008) (internal quotation marks omitted). Importantly, "the plaintiff must set forth the terms of the warranty upon which he relied." *Id.* Here, plaintiff does not set forth any representations by Sunnyside aside from those in the label, nor does she contend that there is evidence of the requisite reliance.

Similarly, plaintiff has not raised an issue of fact regarding Sunnyside's breach of any implied warranty of merchantability. "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used . . . ." *Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*, 230 A.D.2d 326, 330 (3d Dep't 1997). "For goods to be of merchantable quality they need to be reasonably fit for their intended purpose; they need not, however, be perfect." *Id.*; *see also Meserole v. Sony Corp. of Am., Inc.*, 2009 WL 1403933, at *8 (S.D.N.Y. May 19, 2009) ("[A] claim for breach of implied warranty of merchantability . . . requires that the product be reasonably fit for the ordinary purpose for

12

which it was intended."). Plaintiff does not argue that the solvent was unfit for its intended purpose—rather, plaintiff concedes that use of the solvent as a glass cleaner was neither an advertised nor intended purpose. Thus, summary judgment is appropriate on this claim as well. *See Frater v. Home Depot U.SA., Inc.*, 2012 U.S. Dist. LEXIS 14969, at *2 (E.D.N.Y. Feb. 6, 2012) (requiring issue of fact as to whether product was "unfit for its advertised purpose").

Finally, because Alecia Walker's wrongful death claim derives from her husband's product liability claims, Sunnyside is entitled to summary judgment on this cause of action. *See Pratt v. George Spalty Sons, Inc.*, 516 N.Y.S.2d 433, 591-92 (Sup. Ct. Monroe Co. 1987) ("[C]ause of action for wrongful death . . . [requires a] wrongful act, neglect or default of defendant by which the decedent's death was caused . . . .").

**2.      Ball Corporation's Motion for Summary Judgment**

Ball Corporation seeks summary judgment on the cross-claims for indemnification and contribution asserted against it by Sunnyside and Affordable Enterprises. Since the Court has granted summary judgment on plaintiff's claims against Sunnyside, the indemnification and contribution claims are dismissed. Ball Corporation's motion is therefore denied as moot.

### III

Sunnyside's motion for summary judgment is granted in full; Sunnyside and Affordable Enterprises' cross-claims against Ball Corporation for indemnification and contribution are dismissed; and Ball Corporation's motion is denied as moot. This case is dismissed.

**SO ORDERED.**

/s/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 24, 2013